USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 13 Aug 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
INTERNATIONAL BOTTLED WATER ASSOCIATION,
NESTLE WATERS NORTH AMERICA, INC., and
POLAR CORP. d/b/a POLAR BEVERAGES,

                   Plaintiff,

AMERICAN BEVERAGE ASSOCIATION,

                 Intervenor-Plaintiff,

09 Civ. 4672 (DAB)
ORDER

        -against-

DAVID A. PATERSON, in his official capacity
as Governor of the State of New York, et al.,

               Defendant.
------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    I. FACTUAL BACKGROUND

    Prior to recent Amendments, the New York State Returnable Container Act ("RCA" or "Bottle Bill") required retailers, distributors, redemption centers and bottlers to collect and redeem deposits on several beverage containers such as aluminum cans, glass, and plastic bottles for soft drinks, mineral and soda water, and beer. N.Y. Envtl.Conserv. Law §§ 27-1003-(1)-(2)(1982). The Bottle Bill required consumers to pay a five-cent deposit on purchases of specified beverages (primarily carbonated beverages) but allowed purchasers to later obtain a refund of the five cents by returning the empty container to a retailer,

1

redemption center, or reverse vending machine. N.Y. Envtl.Conserv.Law § 27-1001 et seq. New York required those beverage containers to be marked "New York" or "NY" and to designate the refund value of five cents. Id. Under the program, bottling companies and distributors bore the cost of collecting and recycling redeemed containers, as well as paying redemption centers a two-cent per bottle handling fee. Id. That cost was partially offset because the law permitted companies to retain all unclaimed deposits. Id.

Amendments to the RCA were signed into law on April 7, 2009, expanding the scope of the Act. N.Y. Envtl.Conserv.Law § 27-1012, 4.a (as amended 2009). Those Amendments were to go into effect on June 1, 2009. They would have required retailers, distributors, redemption centers, and bottlers to start collecting and redeeming bottle deposits on all non-carbonated bottled water[1] sold in New York, required beverage companies to return 80 percent of the unclaimed deposits to the State General Fund, and increased the handling fee from two cents to three and a half cents per bottle. In addition, the Amendments sought to require a New York state specific Universal Product Code ("UPC")

---

[1] The Amendments, however, excepted bottled water containing sugar from the redemption program. N.Y. Enctl.Conserv.Law § 27-1003, 1 (as amended 2009).

2

which identified the product as "offered for sale exclusively in New York state" "as a means of preventing illegal redemption of beverage containers purchased out-of-state". N.Y. Envtl.Conserv.Law § 27-1012, 12 (as amended 2009). Finally, the Amendments contained various other accounting, reporting and registration requirements to facilitate the newly-required transfer of deposit revenue to the State. Id. § 27-1012, 1, 3, 7.a.

## II. PROCEDURAL HISTORY

This case came to the Court in the form of an Order to Show Cause which was signed on May 20, 2009 setting a hearing schedule before the Part 1 Judge for May 27, 2009. On that day a hearing was held before the Honorable Judge Thomas P. Griesa, who, after entertaining argument, stated on the record that "defendants are preliminarily enjoined from carrying out or enforcing that phase of the statute which provides that bottles with the new labels are to be sold exclusively in the State of New York." (May 27, 2009, Tr. 55:13-16.) He further stated that, "as far as the general application of the new labeling law, the requirement of the new labels, the requirement that those labels will be put on bottles sold in New York - and the other phase of the statute, aside from the one I've just described about exclusivity, there

is no objection." (Id. at 55:17-22.) He went on to state, "[h]owever, there is a very strong objection on really due process grounds of what is termed an impossible deadline to have all this arrangement done by June 1." (Id. at 55:22-24.) He found, "[t]he Court is granting a preliminary injunction against enforcement of the June 1 deadline, and I will entertain a proposed order providing for a more reasonable deadline." (Id. at 55:25-56:3.) Then on May 29, 2009, Judge Griesa signed an Order proposed by Plaintiffs which stated, among other things,

> (1) Defendants are enjoined from implementing and enforcing the New York-exclusive Universal Product Code provision of the New York State Returnable Container Act (the "Bottle Bill") as amended, N.Y.Envtl.Conserv.Law § 27-1012.12;
>
> (2) Defendants are enjoined from implementing and enforcing any and all other amendments to the Bottle Bill signed into law April 7, 2009 until April 1, 2010, to allow persons subject to the amendments sufficient itme to comply with the law's requirements

(09 Civ. 4672, Dkt. No. 30, Order, May 29, 2009 at 1.)

Subsequently, Defendants brought an Order to Show Cause seeking modification of the Preliminary Injunction Order entered by Judge Griesa. A hearing date was set for June 18, 2009, but eventually adjourned on representation of the Parties that they were pursuing resolution of the matter. (06 Civ. 4672, Dkt. Nos. 31, 34, 49, 50.) The Court subsequently attempted to set another

4

hearing date on this motion to modify the preliminary injunction, as well as to hear from a number of proposed intervenors, however, that hearing was adjourned because of the unavailability of counsel. Because of the number of parties, intervenors and proposed intervenors in this case, and the Court's own full schedule, a new hearing date in the near future appears impracticable. This Order addresses those aspects of the motion to modify the preliminary injunction that do not require oral argument.

### III. DISCUSSION

Parties to this action do not dispute, at this time, that the Court properly enjoined enforcement of the New York-exclusive UPC provision of the Bottle Bill. (Def. Rep. Mem. of Law at 4.) Indeed, this Court agrees with the statement of Judge Griesa that "on the present record the plaintiffs not only have a likelihood of success, they are sure of success as a matter of law" on the question of whether the New York-exclusive provisions of the Bottle Bill violate the Commerce Clause doctrine frequently referred to as "the Dormant Commerce Clause". (May 27, 2009, Tr. 55:8-16.)

Rather, the issue before the Court presented by Defendant's motion to modify the preliminary injunction is whether the

Court's Order enjoining "any and all other amendments to the Bottle Bill signed into law April 7, 2009 until April 1, 2010" is overly broad.  Defendants argue that the Order goes beyond those provisions of the Bottle Bill that were challenged by the Plaintiff and found to be unconstitutional violations of the Dormant Commerce Clause.  (Def. Mem. of Law at 12.)  Defendants further argue that the May 29, 2009 Order is internally inconsistent and ambiguous and, in any event, the provisions found to be invalid by Judge Griesa at the hearing should be severed from the law, leaving the remaining provisions of the law intact and enforceable.  (Def. Mem. of Law at 19-20.)  Plaintiffs International Bottled Water Association ("IBWA"), Nestle Waters North America, Inc. ("NWNA") and Polar Corp. ("Polar") and Intervenor-Plaintiff American Beverage Association ("ABA"), argue on the other hand, that their evidence shows bottled water and other bottled beverage businesses cannot prepare for the "many complicated" and "interrelated" requirements of the new Bottle Bill in only a few months. (IBWA Mem. of Law at 12; ABA Mem. of Law at 12-21.)

From the submissions of the Parties it is clear that the only objection Intervenor-Plaintiffs ABA have to many parts of the Bottle Bill are financial, in that some revenue will be lost to bottling companies when compliance with the amendments is

required. In addition, the Court finds that evidence in the record supports the conclusion that Plaintiffs do not require until April 1, 2010 to achieve compliance with the amendments.[2]

A. Bottle Bill Amendments Impact on Beverages other than Bottled Water

The Bottle Bill made a number of changes that impact bottlers of beverages already in the redemption program. Intervenor-Plaintiff ABA contends that the amendments "revolutionized compliance and accounting practices". (ABA Mem. of Law at 16-17.)[3] However, the Court finds that to the extent implementation of the Amendments would be financially burdensome on the bottlers, Due Process does not require continuing the injunction.

The Second Circuit case cited by the Plaintiffs in their initial moving papers in support of their argument that the June 1, 2009 deadline violated Due Process, described the very legal

---

[2] Plaintiff IBWA, NWNA, Polar consent to the modification of the preliminary injunction order to exclude provisions having no effect on Plaintiffs; those are: N.Y. Envtl.Conserv.Law 27-1016 titled "Public Education" and N.Y. Envtl.Conserv.Law 27-1018 titled "Beverage Conter Assistance Program." (IBWA Mem. of Law at 11.)

[3] The Court notes, in the first instance, that it was the bottled water manufacturers, who will be entering their bottled water products in the redemption program for the first time, that sought the preliminary injunction. Nevertheless the ABA's intervention was granted by this Court.

7

theory Plaintiffs, and now Intervenor-Plaintiff, are attempting to invoke as "unusually inhospitable legal terrain." That case noted that, at the time, the Circuit was aware of no post-1935 cases in which the Supreme Court invalidated an economic regulation on substantive due process grounds." In re Chateaugay Corp., 53 F.3d 478, 487 (2d Cir. 1995). Under the due process standards set forth by the Supreme Court, a Court reviews laws "adjusting the benefits and burdens of economic life" for arbitrariness and irrationality. Id. at 486-87 (citing Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976). The Bottle Bill burdens no fundamental rights, and is therefore "a classic example of an economic regulation" and is subject only to the minimum scrutiny rational basis test. Id. (citing Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 83 (1978)). Substantive due process requires only that economic legislation be "supported by a legitimate legislative purpose furthered by a rational means." Id. (citing Pension Benefit Guarantee Corp. v. R.A. Gray & Co., 467 U.S. 717, 729 (1984)).

The aspects of the Amendments that impact non-bottled water manufacturers are unquestionably supported by a rational basis. New York State's decision to increase the handling fee addresses concerns of redemption and recycling centers, some of whom have represented to this Court that they are near collapse. Likewise,

New York State's decision to retain eighty percent of the uncollected bottle deposits is a rational means to increase State revenue. Other new accounting mechanisms are merely the means by which the State is seeking to further the new revenue collection. Consequently, to the extent that the Court has enjoined the Amendments to the Bottle Bill impacting bottled beverages other than bottled water, that injunction is HEREBY LIFTED.

B. Bottle Bill Amendments Relating to Bottled Water

It is the Court's understanding that Judge Griesa intended to enjoin all aspects of the Bottle Bill that pertain to bottled water products until April 1, 2010. Indeed, there is no question that the time frame set by the Amendments for compliance integrating bottled water into the redemption program was short.

The Court notes, however, that one of the Plaintiffs, NWNA, previously represented to this Court that they would prepared "to fully comply" with the Amendments by October 1, 2009. (06 Civ. 4672, Dkt. No. 11, Friedrich Decl. at ¶ 26.)[4] The Court further

---

[4] Plaintiffs do not dispute that they will need to comply eventually. At the hearing before Judge Griesa, Plaintiffs conceded that they did not challenge the five cent deposit requirement (May 27, 2009, Tr. 11:22-24; 12:19-23), the 80 percent escheat of unredeemed deposits to the state treasury (id. at 13:5-10), adding "New York" to labels (id. at 29:2-5), and registering with the Department of Taxation and Finance. (Id. at p.29, 25; 55:19-20.) At the hearing the Plaintiffs summarized

9

notes that water bottlers will be updating their labels, in any event, in order to comply with a recent change in the Connecticut Bottle Bill, by October 1, 2009. (06 Civ. 4672, Dkt. No 35, **Ex. E**, Clarke Decl. at ¶ 43.) In addition, like Intervenor-Plaintiffs, Plaintiffs are walking on "unusually inhospitable legal terrain."

Therefore, it is the Court's expectation that Plaintiffs IBWA, NWNA and Polar are actively working to achieve compliance with all aspects of the Bottle Bill except the New York exclusive provisions. As set forth in the Conclusion of this Order, Plaintiffs shall SHOW CAUSE on October 22, 2009, why Due Process requires the continued injunction.

### C. Increasing the Bond

Defendants argue that "[a]n injunction covering 'any and all other amendments' to the Bottle Bill will cause the New York State General Fund to lose and estimated $86 million by March 31, 2010 due to the defendant's inability to collect 80 percent of unredeemed deposits from beer and soda containers alone." (Def. Mem. of Law at 22.) "An additional 29 million dollars will be

---

their grievances: "We object to, number on, regulating our actions outside of New York; and number two, imposing those requirements with only seven weeks' lead time; and number three, the sugar water exception." (Id. at 30:6-8).

10

lost in the same time frame from water bottlers covered by this preliminary injunction." (Id.)  Therefore, Defendants argue "[a] meager $10,000.00 bond simply will not cover even a meaningful fraction of the losses to the defendants, the State and the citizens of New York imposed by this preliminary injunction." (Id.) Accordingly, Defendants argue that "[g]iven the possibility of this enormous loss to the public fisc during a financial crisis when New York State revenues have been buffeted by the downturn, this Court should exercise its discretion and order plaintiffs to post a bond in the amount of $115 million for all moneys lost or, for $86 million, if the injunction is not modified to allow collection of unredeemed deposit moneys from the manufacturers of beverages covered by the Bottle Bill prior to the April 2009 Bottle Bill Amendments or, for at least $29 million if the preliminary injunction is modified so that it applies only to water bottlers."  (Id. at 23.)  Because the Court is modifying the preliminary injunction, the Court construes Defendant's request as for a bond $29 million dollars to be set.

Nevertheless, the Court denies Defendant's motion to increase the bond because the Court finds that balancing the Plaintiff's likelihood of success on their Dormant Commerce Clause challenge as well as the hardship to Plaintiffs posting such a large bond against the loss to the State as a result of

the Court-ordered injunction does not merit an increase in the bond amount.

IV. CONCLUSION

The Court's injunction of the New York-exclusive UPC provisions of the Bottle Bill Amendments remains in full force and effect. N.Y. Envtl.Conserv.Law § 27-1012, 12 (as amended 2009.

To the extent that the Court has enjoined enforcement of Amendments to the Bottle Bill impacting bottled beverages other than bottled water, that injunction is HEREBY LIFTED; Defendants are not enjoined from immediately implementing and enforcing all provisions impacting bottled beverages, other than bottled water, including provisions that went into effect on April 1, April 7, and the remaining provisions that were effective June 1, 2009.

In addition, all Parties SHALL appear on Thursday October 22, 2009, 500 Pearl Street, New York, NY in Courtroom 24B, at which time Plaintiffs International Bottled Water Association, Nestle Waters North America Inc., and Polar Corp d/b/a Polar Beverages, SHALL SHOW CAUSE why Due Process requires a continuation of the injunction.

There shall be no modification of the bond in the amount of Ten Thousand Dollars ($10,000.00) already posted with the Court.

Consequently, Paragraph (2) of the May 29, 2009 Preliminary Injunction ORDER shall be MODIFIED to read: "Defendants are enjoined from implementing and enforcing any and all other amendments pertaining exclusively to bottled water products made by Part SS of Chapter 59 of the Laws of 2009 to Title 10 of Article 27 of the N.Y. Environmental Conservation Law until October 22, 2010."

SO ORDERED.

Dated:    New York, New York
          August 13, 2009

                                            _____
                                            Deborah A. Batts
                                            United States District Judge